STATE OF IOWA, Appellee, v. MRS. CLAUD STONER, Appellant.

HUSBAND AND WIFE: Crimes—Presumption In Re Coercion.
Slight circumstances are sufficient to carry to the jury the issue whether a wife, in the commission of a crime, exercised her own free volition, or was coerced by the will of her husband. Evidence held sufficient.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, . Judge.

NOVEMBER 16, 1920.

THE accused was convicted of having owned or kept intoxicating liquors, with intent to sell the same in Polk County. She appeals.—*Affirmed.*

*Joseph D. Laws,* for appellant.

*H. M. Havner,* Attorney General, *F. C. Davidson,* and *Shelby M. Cullison,* for appellee.

LADD, J.—The only issue to be decided is whether the evidence is sufficient to sustain the verdict, appellant contending that it conclusively appeared that defendant was acting under the coercion of her husband. On her way home from St. Joseph, Missouri, over the Chicago Great

Western Railroad Company's railway, the accused was accompanied by her husband and little daughter. Upon her arrival at Des Moines, she carried a dark colored handbag from the train toward the waiting room. Before reaching that room, she was accosted by an officer, whom she told, on inquiry, that the handbag did not belong to her, and explained that, as a stranger was about to leave the train, he had said, "You take this suit case and set it in the waiting room, and I will give you a dollar;" that she at first refused, but, upon being told by her husband to "pick it up and carry it," she obeyed him. She testified to this, and that, but for what her husband said, she would not have carried the handbag. Her husband, who was standing near, then stepped up to the officer, and told him that the woman had nothing to do with the bag; whereupon both were arrested. She described the stranger as a big fellow with a mustache, accompanied by a young fellow, and swore she never saw either before. Her husband identified him as Jack Blades, whereupon she hit him on the chest with her fist, and told him to "shut up." Her explanation was that her little girl became hungry on the way, and the stranger procured for her a sandwich, and that that was the way she became acquainted with him. But a special officer appears to have boarded the train at Lamoni, and observed the accused with her husband and daughter in one of the coaches, and that near them were certain suit cases; and he notified the sheriff's office at Des Moines. A special officer of the railroad company, upon boarding the train at Lorimer, noticed appellant with her husband and daughter in the chair car, and near them several suit cases, subsequently found to contain intoxicating liquors; and, upon arriving at the Union Station, observed the accused, accompanied by her husband, alight from the train with her handbag, as previously stated. They were sitting in the car, she on one side of the aisle and her husband on the other. On the way, he moved one or two of the suit cases near where she sat. The witness swore that defendant remained in her seat, and that her husband finally sat with

her, but stood in the end of a car, in approaching the city; that he did not see her talk with any man other than her husband, and did see them leave the train with a heavy-laden handbag; that Blades was not sitting near the defendant and her husband; and that he did not see him talking to them. Two deputy sheriffs testified that they boarded the train in the suburbs of the city, went into the chair car, and noticed defendant, with her little girl, seated near the middle of the car; that they noticed a grip, handbag, and suit case in the seat where she and her daughter were riding; that, upon inquiry, they denied knowledge of whom they belonged to.

Such, in substance, is the evidence, and it is said that, upon the perpetration by the wife of an offense such as charged, in the presence of her husband, the former is presumed to be acting under the latter's coercion. *State v. Fitzgerald,* 49 Iowa 260; *State v. Harvey,* 130 Iowa 394. This presumption is rebuttable. It is merely *prima facie,* and the wife may be convicted, if it be proven that she acted on her own volition. See *Bibb v. State,* 94 Ala. 31 (33 Am. St. 88), and note; *State v. Nargashian,* 26 R. I. 299 (106 Am. St. 715), and note. Moreover, but slight circumstances are essential to meet the presumption, and to carry to the jury the issue as to the exercise of the wife's volition. *State v. Cleaves,* 59 Me. 298; *Morton v. State,* 144 Tenn. 357 (4 A. L. R. 264). Her conduct in the husband's presence may be such as to overcome the presumption of coercion otherwise to be presumed. *Commonwealth v. Adams,* 186 Mass. 101 (71 N. E. 78); *People v. Wright,* 38 Mich. 744 (31 Am. Rep. 331); *Seiler v. People,* 77 N. Y. 411. Each case is governed by its own facts. Here, the jury might have found that the story of the stranger was hatched up; for the officers, with opportunity to see, swore that they observed no one, between Lorimer and the Union Station, conversing with her, and that she accompanied her husband from the train. Moreover, the story is of doubtful credibility. She swore that the handbag belonged to neither her nor her husband; and, if no stranger told her

to carry it, as the jury might have found, her husband could not have heard him, and the claim that her husband bade her, upon her refusing the stranger to carry it, fails, and she must have been acting on her own motion. We are of opinion that the jury might well have rejected her entire story as a falsehood, and have found that she was acting on her own volition. On what other theory had she cautioned her husband to "shut up," and struck him on the chest when her spouse told the officers that Jack Blades was the stranger who had handed her the handbag? The court did not err in submitting the issue to the jury.— *Affirmed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.